# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| OCTAVIO ALBERTO BETANCUR, <br><br> Petitioner, <br><br> v. <br><br> WARDEN TRACY JOHNS, <br><br> Respondent. | CIVIL ACTION NO.: 5:15-cv-87 |

## <u>ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Petitioner Octavio Betancur ("Betancur"), who is currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, and Betancur filed a Reply. (Docs. 14, 17.) For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Betancur's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Betancur *in forma pauperis* status on appeal.

## BACKGROUND

The Southern District of Texas convicted Betancur after he was found guilty of: engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). (Doc. 14-1, p. 12.) The Southern District of Texas originally sentenced Betancur to 360 months' imprisonment but later re-sentenced Betancur to 292 months' imprisonment after the applicable Sentencing Guidelines were lowered. (Id. & at p. 16.) Betancur has a projected release date of January 18, 2017.

(Id. at p. 13.) On December 4, 1995, the Bureau of Immigration and Customs Enforcement lodged a detainer against Betancur. (Id. at p. 20.)

## DISCUSSION

In his Petition, Betancur states he understands he is a deportable alien and is subject to deportation because he was convicted of an aggravated felony. (Doc. 1, p. 3.) However, Betancur alleges that he is entitled to a compassionate release from confinement at D. Ray James Correctional Facility ("D. Ray James"). However, he maintains that Respondent will not grant him such release since D. Ray James is a private prison which needs to make as much money as it can due to Betancur's continuing period of incarceration. (Id. at p. 4.) Betancur states Bureau of Prisons' policy regarding administrative remedies is biased and prejudicial against aliens, as this policy sets forth that the administrative remedy process is available only to those inmates in federal facilities. (Id. at p. 6.) Additionally, Betancur contends he and other aliens who have served more than ninety percent of their term of imprisonment with good conduct cannot participate in certain programs, whereas non-alien inmates who have only served sixty-five percent of their sentences can participate in these programs. (Id. at p. 7.)

Respondent states Betancur failed to exhaust his administrative remedies before filing his Petition. In the alternative, Respondent asserts Betancur's claims are without merit, and he does not set forth claims for relief pursuant to Section 2241. (Doc. 14, p. 3.) Respondent raises several reasons why Betancur's Petition should be dismissed, and the Court addresses these reasons in turn and as necessary.[1]

---

[1] Respondent also asserts that Betancur cannot raise the applicability of an Arizona statute in this Section 2241 Petition. (Doc. 14, p. 6.) For the reasons set forth in Respondent's Response, the Court agrees that Betancur cannot raise a state law claim in this Section 2241 Petition. In addition, Respondent maintains Betancur cannot pursue any alleged Fifth Amendment equal protection violations. Whether Betancur's putative constitutional claims are viable at this time is of no moment, as Betancur cannot raise constitutional claims regarding the conditions of his confinement in this Section 2241 Petition. See, e.g.,

**I. Whether Betancur Exhausted his Administrative Remedies**

**A. Legal Requirements for Exhaustion**

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the Supreme Court recently "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y

---

Farmer v. Brennan, 511 U.S. 825 (1994) ("In general, the distinction between claims which may be brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and those which must be brought as habeas petitions is reasonably well settled. Claims in which federal prisoners assert that they are being subjected to unconstitutional punishment not imposed as part of their sentence are Bivens actions, not habeas actions."). To the extent the Court has considered Betancur's arguments in this regard, these arguments are subject to dismissal based on Betancur's failure to exhaust his administrative remedies, as discussed in Section I of this Report.

3

for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27,

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

4

2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[3] First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may

---

[3] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a Section 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting Section 2241's exhaustion requirements and Turner's application of exhaustion standards to a Section 2241 petition).

5

consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Betancur's Efforts at Exhaustion

In his Petition, Betancur indicates that he attempted to pursue his administrative remedies. However, he contends that he could not proceed beyond the informal resolution stage because staff did not respond to his requests. (Doc. 17, p. 3.) Betancur states it is futile to try to pursue his administrative remedies, and the Court should waive the exhaustion requirement.[4] (Id. at p. 4.) Thus, in an abundance of caution, the Court will proceed to the second Turner step and make specific factual findings pertinent to the exhaustion question.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 14-1,

---

[4] A petitioner's ability to set forth a "futility exception to the [exhaustion] requirement is questionable." Jaimes v. United States, 168 F. App'x 356, 359 & n.4 (11th Cir. 2006). Although some courts within the Eleventh Circuit have noted that, under certain circumstances, a Section 2241 petitioner may seek judicial waiver of the Eleventh Circuit's exhaustion requirement by demonstrating futility, they have also concluded that "the question [of] whether the Eleventh Circuit considers the exhaustion requirement in § 2241 subject to judicial waiver is, at best, unsettled." Jones v. Zenk, 495 F. Supp. 2d 1289, 1297, 1299–1300 (N.D. Ga. July 6, 2007). However, based on Eleventh Circuit precedent, Betancur is still subject to the requirement of administrative exhaustion. Martin v. Zenk, 244 F. App'x 974, 977 (11th Cir. 2007). "In any event, those courts which apply a futility exception do so in only 'extraordinary circumstances,' and require the petitioner to 'bear[ ] the burden of demonstrating the futility of administrative review.'" Ross v. Wells, No. CV 312-025, 2012 WL 1453593, at *3 (S.D. Ga. Apr. 17, 2012) (internal citations omitted) (alteration in original), *report and recommendation adopted*, No. CV 312-025, 2012 WL 1453592 (S.D. Ga. Apr. 26, 2012). Additionally, the United States Supreme Court rejected a "special circumstances" exception to exhaustion in Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856–57 (June 6, 2016). The Court, however, reiterated that a prisoner need only exhaust those remedies which were available to him. ___ U.S. ___, 136 S. Ct. at 1858 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. Here, even accepting Betancur's allegations as true, he has not shown that the administrative remedies are D. Ray James were unavailable to him as the Court contemplated in Ross. Moreover, under the second Turner step, even if Betancur had sufficiently alleged unavailability, the Court finds that Respondent's account of the availability of remedies more credible than Betancur's account. Additionally, Betancur is not currently being detained past his statutory release date.

6

p. 5.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form within twenty (20) days of the informal resolution request. (Id. at p. 6.) An inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form within five business days after the Step 1 response is returned. (Id. & at p. 57.) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP-related matters.[5] (Id. at p. 7.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (Id.) If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. (Id. at p. 8.)

The evidence before the Court reveals Betancur has not filed any administrative remedy requests for BOP-related matters since he has been incarcerated based on his federal sentence. (Id. at pp. 8, 60.) In addition, Vincent Shaw, Senior Litigation Counsel with the Bureau of Prisons' Southeast Regional Office, declares that staff at D. Ray James were "unaware of any filings concerning the issues presented in this petition." (Id. at p. 8.) The Court finds this evidence more credible than Betancur's unsupported and conclusory allegations regarding exhaustion. Thus, Betancur failed to file an administrative remedy as to his claims that he is entitled to early release. As set forth in footnote 5 of this Report, Betancur's claims concern BOP-related matters which must be appealed through the above-described process, which Betancur failed to do. Additionally, based on Respondent's submissions, it appears that the

---

[5] Examples of BOP-related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. Pichardo v. Zenk, CV511-69, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (Oct. 26, 2011).

BOP's administrative remedies are available to Betancur, despite any contentions he may raise to the contrary.[6] Consequently, the Court should **DISMISS** Betancur's claims for failure to exhaust.

## II. Whether Betancur is Entitled to Compassionate Release

Even assuming Betancur had exhausted his administrative remedies prior to the filing of his Petition, he still is not entitled to his requested relief. Section 3582(c)(1)(A) of Title 18 of the United States Code provides: A "court may not modify a term of imprisonment once it has been imposed except that--

(1) in any case--

> (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

---

[6] Betancur submitted what appear to be Step 1 Administrative Remedy forms dated August 13, 2015, and August 22, 2015. (Doc. 17-1, pp. 2–3.) However, nothing on these forms indicates staff received them or that Betancur otherwise pursued the administrative remedies process beyond the completion of these forms. Betancur's Petition was signed on September 18, 2015. (Doc. 1, p. 20.) Accordingly, it is doubtful that, had Betancur initiated the exhaustion requirements on August 13, 2015, that this process would have reached completion before he executed his Petition.

In other words, courts do not have the authority to modify a sentence under Section 3582(c)(1)(A) except upon motion of the Director of the Bureau of Prisons. Cruz-Pagan v. Warden, FCC Coleman-Low, 486 F. App'x 77, 79 (11th Cir. 2012). There is no motion from the Director of the Bureau of Prisons presently before the Court seeking the modification of Betancur's sentence. Thus, this Court lacks jurisdiction to entertain Betancur's Petition, even if he had exhausted his administrative remedies. The Court should **DISMISS** Betancur's Petition for this additional reason.

### III.  Leave to Appeal *In Forma Pauperis*

The Court should also deny Betancur leave to appeal *in forma pauperis*. Though Betancur has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Betancur's Petition, Respondent's Response, and Betancur's Reply, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** without prejudice Betancur's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Betancur leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Betancur and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 26th day of October, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA